IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, a Delaware corporation; **ADIDAS AG**, a foreign entity,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**SKECHERS USA, INC.**, a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 3:16-cv-1400-SI<br><br>**OPINION AND ORDER DISMISSING WILLFUL INFRINGEMENT** |

Stephen M. Feldman, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; Mitchell G. Stockwell, KILPATRICK TOWNSEND & STOCKTON LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309; Matias Ferrario and Michael Morlock, KILPATRICK TOWNSEND & STOCKTON LLP, 1001 West Fourth Street, Winston-Salem, NC 27101. Of Attorneys for Plaintiffs.

Kenneth R. Davis II and Parna A. Mehrbani, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204; Mark A. Samuels, Brian M. Berliner, Andrea LaFountain, and Sina S. Aria, O'MELVENY & MYERS LLP, 400 S. Hope Street, Suite 1800, Los Angeles, CA 90071; Cameron W. Westin, O'MELVENY & MYERS LLP, 610 Newport Center Drive, 17th Floor, Newport Beach, CA 92660. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

　　　Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") bring this lawsuit

against Defendant Skechers USA ("Skechers") for patent infringement. Plaintiffs allege that

Defendant's "Mega Blade 2.0" and "Mega Blade 2.5" shoes (collectively, the "Mega Blade shoes") infringe on Plaintiffs' United States Patent Nos. 9,339,079 (the "'079 patent") and 9,345,285 (the "'285 patent") (collectively, the "patents-in-suit"). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves to dismiss Plaintiffs' claims of willful infringement. For the reasons stated below, the Court grants Defendant's motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Adidas AG is the owner by assignment of the patents-in-suit. Adidas America is the exclusive licensee in the United States under the patents-in-suit. The '079 patent is titled "Shoe and Sole." Issued on May 17, 2016, the '079 patent describes the invention as including specific "leaf spring elements" intended to provide cushioning properties that minimize disadvantages associated with the use of foamed materials, which are typically used in shoe construction. The '285 patent also is titled "Shoe and Sole." Issued on May 24, 2016, the '285 patent describes the invention similarly. On July 11, 2016, Plaintiffs filed their complaint against Defendant in this action, alleging that Defendant's Mega Blade shoes infringe the patents-in-suit.

Plaintiffs allege that Defendant directly and willfully infringed both patents-in-suit and that Defendant also infringed on the patents-in-suit indirectly by inducement. As alleged by Plaintiffs, the '285 patent application was published on June 16, 2011, and the '079 patent application was published nearly five years later, on March 3, 2016. Plaintiffs also allege that adidas introduced its Springblade shoe in June 2013 and its Springblade Ignite shoe in February 2015. (Unless otherwise indicated, the Court will refer in this Opinion and Order to both the Springblade shoe and the Springblade Ignite shoe simply as the "Springblade shoes.") Plaintiffs further allege that the Springblade shoes practice the patents.

After publication of a patent application, the claims made, as well as any further changes in the application, are available for review by the public. According to Plaintiffs, Defendant or its agents had access to, and allegedly actually accessed, the published applications leading to the patents-in-suit before the patents issued. Also according to Plaintiffs, Defendant was aware,

before the filing of this lawsuit and even before the issuance of the patents, of the scope of patent protection that adidas was seeking—and would later be awarded by the U.S. Patent Office—for adidas's Springblade shoe technology. *Id.*

Plaintiffs further allege that they launched their commercial implementation of the patents-in-suit in the form of the Springblade shoes before Defendant launched its accused Mega Blade shoes. According to Plaintiffs, Defendant had access to, and allegedly copied, the features and technology of Plaintiffs' Springblade shoes—including the inventions covered by the patents-in-suit—when Defendant created the Mega Blade shoes. Defendant's copying is evident, Plaintiffs assert, from a visual comparison of the parties' respective shoes. Public reports also show, according to Plaintiffs, that industry commenters and consumers recognized that Skechers "copied" the design and features of the Springblade shoes.

## DISCUSSION

Defendant moves to dismiss Plaintiffs' willful infringement claims, asserting that the Complaint fails to allege that Defendant had pre-suit knowledge of the actual patents-in-suit. Defendant argues that Plaintiffs' allegations that Defendant had pre-suit knowledge of the pending applications for the patents-in-suit are insufficient to state a claim for willful infringement.

Plaintiffs respond that the Complaint contains plausible allegations that support several bases for enhanced damages. First, Plaintiffs argue that they have expressly alleged that Defendant had knowledge of the "patents," *see* ECF 1, ¶¶ 41, 48, and that these allegations are supported by other allegations that Defendant copied adidas's designs and had knowledge of, and access to, the published applications and the issued patents before Plaintiffs filed their Complaint. According to Plaintiffs, all that is required for an award of enhanced damages is sufficiently "culpable behavior." Plaintiffs argue that the allegations regarding visual evidence of

copying, which has been recognized by industry analysts and consumers, sufficiently allege Defendant's culpable behavior and requisite knowledge. Second, Plaintiffs argue that Plaintiffs' allegations that Defendant was "willfully blind" to the patents-in-suit also are independently sufficient to prove knowledge of a patent and, thus, support Plaintiffs' claim of willfulness.

A. **Enhanced Damages for Willful Infringement**

"Section 284 of the Patent Act provides that, in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016) (quoting 35 U.S.C. § 284). "[T]here is no precise rule or formula for awarding damages under §284." *Id*. at 1932 (quotation marks omitted). "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. "District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount. But through nearly two centuries of discretionary awards and review by appellate tribunals, the channel of discretion ha[s] narrowed, so that such damages are generally reserved for egregious cases of culpable behavior." *Id*. (citation and quotation marks omitted) (brackets in original).

B. **Proving Willful Infringement**

Whether infringement is "willful" is by definition a question of the infringer's intent, the answer to which must be inferred from all of the circumstances. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990)); *see also Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) ("A determination of willfulness requires an assessment of a defendant's state of mind."). "Courts consider several factors when determining whether an infringer has

acted in bad faith and whether damages should be increased." *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006). They include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and (3) the infringer's behavior as a party to the litigation.

*Read Corp. v. Portec Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996). Other circumstances that courts consider, "particularly in deciding on the *extent* of enhancement," are: (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motive to harm; and (9) whether the infringer attempted to conceal its misconduct. *Read*, 970 F.2d at 827 (emphasis added).

Knowledge of the patent by the alleged infringer is a prerequisite to proving infringement and, thus, a prerequisite to proving willful infringement. *Gustafson*, 897 F.2d at 510-11 ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."); *accord WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (reaffirming that, following *Halo*, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages").

Moreover, [t]o willfully infringe a patent, *the patent must exist* and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis removed and emphasis added). Therefore, "a party cannot be held liable for 'infringement,' and thus not for 'willful' infringement, of a *nonexistent* patent." *Gustafson*, 897 F.2d at 510 (emphasis in original); *accord State*, 751 F.2d at 1236-37. It follows that an infringer's knowledge of the patent application cannot, standing alone, constitute knowledge of

the resulting, or issued, patent-in-suit. *State*, 751 F.2d at 1236-37 (explaining that "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents" and that "[w]hat the scope of claims in patents that do issue will be is something totally unforeseeable").

**C. Pleading Willful Infringement**

To avoid dismissal under Rule 12(b)(6), a patentee must plead sufficient facts plausibly to support the allegation that the infringer had knowledge of the patent-in-suit (as well as the allegation of infringement). *Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007); *Virginia Innovation Scis. v. Samsung Elecs. Co., Ltd.*, 983 F. Supp. 2d 700, 708 (E.D. Va. 2013); *see also Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (holding that under the rule announced by the U.S. Supreme Court in *Dunlap v. Schofield*, 152 U.S. 244 (1894), in order to state a claim for willful infringement, a patentee must allege that the infringer acted "with a knowledge of the patent and of [its] infringement"). Pleading facts that the infringer merely had knowledge of the patent application is insufficient, without more, plausibly to support an allegation that the infringer had knowledge of the patent-in-suit. *See, e.g., Virginia Innovation*, 983 F. Supp. 2d at 708-09 (citing *State*, 751 F.2d at 1236) ("[I]t is insufficient to allege knowledge of a patent application without further alleging knowledge of the patent.").

Plaintiffs have expressly alleged that Defendant had knowledge of the patents-in-suit. *See* ECF 1, ¶¶ 41, 48. Plaintiffs, however, offer no additional factual allegations to support that conclusory assertion. Plaintiffs do not allege, for example, how or when Defendant acquired its knowledge of the patents-in-suit. As a matter of law, Plaintiffs could not have acquired knowledge of the patents-in-suit before their issuance in May 2016. Thus, even though Plaintiffs have alleged the conclusion that Defendant accessed and copied the applications of the patents-

in-suit before their issuance, the earliest dates on which Defendant could have acquired knowledge of the actual patents-in-suit were May 17, 2016 for the '079 patent and May 24, 2016 for the '285 patent.

Plaintiffs, however, do not actually allege that Defendant acquired knowledge of the issuance of the patents-in-suit. Plaintiffs also do not allege that Defendant actively monitored the progress of Plaintiffs' patent applications, so that Defendant would have learned of their issuance when they issued. Plaintiffs also do not allege that they provided Defendant with any notice that the patents-in-suit had issued. Nor do Plaintiffs allege that Defendant actually learned of the issuance of the patents-in-suit before Plaintiff commenced this lawsuit. Plaintiffs merely allege the relevant dates of application and issuance and the conclusion that Defendant had the requisite knowledge. In other words, Plaintiffs plead no facts from which the Court may draw the reasonable inference that Defendant knew of the patents-in-suit either when they issued or any time before Plaintiffs filed this lawsuit. *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs' allegations are insufficient to state a claim for willful infringement based on Defendant's conduct before the lawsuit was filed. *See Starr*, 652 F.3d at 1216 (allegations in a complaint "may not simply recite the elements of a cause of action"); *Iqbal*, 556 U.S. at 678-79 (courts need not credit a plaintiff's conclusions that are couched as factual allegations).

The Court next considers whether Plaintiffs have sufficiently stated a claim for willful infringement based on Defendant's post-suit conduct. There is no dispute that Plaintiffs' Complaint provided Defendant with notice of the patents-in-suit, as well as Plaintiffs' allegations of infringement. Plaintiffs also allege that after Defendant received that notice, Defendant continued to make and sell the allegedly infringing Mega Blade. A patentee, however, must have a good faith basis for alleging willful infringement at the time when the complaint is filed. *In re*

*Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated by Halo*, 136 S. Ct. 1923 (2016) (citing Fed. R. Civ. Pro. 8, 11(b)); *see also Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1297 (Fed. Cir. 2017) ("The relevant date for determining which conduct is pre-suit is the date of the patentee's affirmative allegation of infringement."). "So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Seagate*, 497 F.3d at 1374.

In other words, there can be no infringement of a patent, willful or otherwise, until the patent issues and the defendant learns of its existence and alleged infringement. If the defendant does not learn of the patent's existence until the plaintiff files a complaint for infringement, there is no basis upon which the plaintiff can plead that the defendant's infringement was willful. *Cf. Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 482 (Fed. Cir. 1985) (distinguishing between cases where the "[infringer's] first notice of the existence of the patent came with the filing of the infringement suit against it"—and, thus, there was no basis upon which to prove willfulness—from cases where the "[infringer] had knowledge of the existence of the patent the day it issued[,]" which was before the filing of the complaint). Thus, Plaintiffs have failed to state a claim for willful infringement based on Defendant's post-suit conduct.

### D. Willful Blindness

Plaintiffs also argue that allegations in the Complaint that Defendant was "willfully blind" to the patents-in-suit is independently sufficient to plead knowledge of the patents-in-suit for purposes of alleging willful infringement. Under the doctrine of willful blindness, a defendant who "subjectively believe[s] that there is a high probability that a fact exists" *and* who "takes deliberate actions to avoid learning of that fact" is "just as culpable as those who have actual knowledge." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011). It is unclear, however, that the doctrine of willful blindness as articulated in *Global-Tech*, an

induced infringement case, applies in the direct infringement analysis context. *See Nonend Inventions, N.V. v. Apple, Inc.*, 2016 WL 1253740, *2 (E.D. Tex. Mar. 11, 2016), *report and recommendation adopted sub nom Nonend Inventions v. Apple, Inc.*, 2016 WL 1244973 (E.D. Tex. Mar. 30, 2016) (noting absence of authority supporting application of willful blindness doctrine in direct infringement context).

Plaintiffs cite no authority to support the contention that it does. Even assuming, however, that the doctrine of willful blindness does apply to direct infringement cases and that Defendant subjectively believed there was a high probability that the patents-in-suit had issued, Plaintiffs fail to allege any facts supporting the assertion that Defendant took any deliberate action to avoid learning of the issuance of the patents-in-suit. Plaintiffs argue only that the allegations that Defendant accessed the patent applications and copied the technology of the Springblade shoes are sufficient to support such a finding. Such conduct, even if true, however, does not indicate that Defendant took action to avoid learning of the issuance of the patents-in-suit.

## CONCLUSION

Defendant Skecher's Motion to Dismiss Plaintiffs' Willful Infringement Claims (ECF 51) is GRANTED.

**IT IS SO ORDERED**.

DATED this 12th day of June, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge