IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, a Delaware corporation; **ADIDAS AG**, a foreign entity,<br><br>Plaintiffs,<br><br>v.<br><br>**SKECHERS USA, INC.**, a Delaware corporation,<br><br>Defendant. | Case No. 3:16-cv-1400-SI<br><br>**OPINION AND ORDER GRANTING STAY** |

Stephen M. Feldman, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; Mitchell G. Stockwell, KILPATRICK TOWNSEND & STOCKTON LLP, 1100 Peachtree Street, Suite 2800, Atlanta, GA 30309; Matias Ferrario and Michael Morlock, KILPATRICK TOWNSEND & STOCKTON LLP, 1001 West Fourth Street, Winston-Salem, NC 27101. Of Attorneys for Plaintiffs.

Kenneth R. Davis II and Parna A. Mehrbani, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204; Mark A. Samuels, Brian M. Berliner, Andrea LaFountain, and Sina S. Aria, O'MELVENY & MYERS LLP, 400 S. Hope Street, Suite 1800, Los Angeles, CA 90071; Cameron W. Westin, O'MELVENY & MYERS LLP, 610 Newport Center Drive, 17th Floor, Newport Beach, CA 92660. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") bring this lawsuit

against Defendant Skechers USA ("Skechers") for patent infringement. Plaintiffs allege that

Defendant's "Mega Blade 2.0" and "Mega Blade 2.5" shoes (collectively, the "Mega Blade shoes") infringe Plaintiffs' United States Patent Nos. 9,339,079 (the "'079 patent") and 9,345,285 (the "'285 patent") (collectively, the "patents-in-suit"). Defendant has filed five petitions with the United States Patent and Trial Appeals Board ("PTAB") requesting that the PTAB conduct an *inter partes* review ("IPR") of all patent claims asserted in the patents-in-suit. On April 26, 2017, the PTAB instituted IPR in response to the first two petitions and scheduled trial (*i.e.*, oral argument) before the PTAB on January 8, 2018. On May 30, 2017, the PTAB declined to institute IPR on the third and fourth of the five petitions. A decision from the PTAB on whether to institute IPR on the fifth petition is due August 27, 2017. Defendant moves for an order from this Court staying the litigation pending the PTAB's final resolution of all instituted IPR proceedings related to the patents-in-suits. For the reasons that follow, the Court grants Defendant's motion to stay.

## STANDARDS

### A. *Inter Partes* Review

The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011) (codified in various sections of Title 35 of the United States Code), was enacted to improve and replace, among other things, the former *inter partes* reexamination proceeding with a new IPR proceeding and post-grant review. One of the goals of the new IPR proceeding is "to minimize duplicative efforts by increasing coordination between district court litigation and *inter partes* review." *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, 2015 WL 1809309, at *1 (C.D. Cal. Apr. 20, 2015).

Under the AIA, any "person who is not the owner of a patent may file with the [PTAB] a petition to institute an *inter partes* review of the patent." 35 U.S.C. § 311(a). Petitioners "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be

PAGE 2 – OPINION AND ORDER GRANTING STAY

raised under section 102 or 103 [relating to invalidity of the patent or any claim on the basis of prior art]." *Id*. § 311(b). Before it may institute IPR, the PTAB must determine that the petition presents "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id*. § 314(a). If IPR is instituted, the petitioner has the burden of proving lack of patentability by a preponderance of the evidence. *Id*. § 316(e).

The current IPR timeline is more compressed than the timeline under its predecessor *inter partes* reexamination procedure.[1] After an IPR petition is filed, the patent owner may, within three months, file a preliminary response "setting forth the reasons why no *inter partes* review should be instituted." 37 C.F.R. § 42.107(a). Alternatively, the patent owner may expedite the proceeding by waiving the preliminary response. *Id.* § 42.107(b). The PTAB must decide whether to institute IPR within three months from when the patent owner's preliminary response is due. 35 U.S.C. § 314(b). The PTAB must issue a final decision within one year from granting IPR, with the possibility of one six-month extension on a showing of good cause. *Id*. § 316(a)(11); *Id.* § 318(a). A dissatisfied party may appeal the PTAB's decision to the Court of Appeals for the Federal Circuit. *Id*. § 141(c). If the PTAB issues a final written decision and the time for appeal has expired or any appeal has terminated, the PTAB "shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable [and] confirming any claim of the patent determined to be patentable." *Id*. § 318(b).

**B. Motion to Stay**

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

---

[1] The average length of an *inter partes* reexamination previously was approximately 36 months, and if either party appealed the determination from the reexamination, the process could extend another three years. *Affinity Labs of Tex. v. Apple Inc.*, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010).

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016) ("The ability to stay cases is an exercise of a court's inherent power to manage its own docket."). In deciding how best to exercise this inherent power, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. With regard to deciding whether to stay litigation pending IPR, courts generally consider the following three factors:

> 1. whether discovery is complete and whether a trial date has been set;
>
> 2. whether a stay will simplify the issues in question and trial of the case; and
>
> 3. whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.

*Wonderland Nursery Goods*, 2015 WL 1809309, at *2 (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013)). Courts also look to whether "the outcome of the reexamination [or IPR] would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination [or IPR], would eliminate the need to try the infringement issue." *Id.* (quoting *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)).

Generally, courts apply a "liberal policy in favor of granting motions to stay proceedings pending the outcome of . . . IPR proceedings." *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, 2012 WL 7170593, at *4 (C.D. Cal. Dec. 19, 2012). Nonetheless, "the totality of the circumstances governs," and "a stay is never required." *Wonderland Nursery Goods*, 2015 WL 1809309, at *2 (quoting *Universal Elecs.*, 943 F. Supp. 2d at 1031). Whether "to grant a stay falls within the court's sound discretion." *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 591

(2014). The moving party has the burden to persuade the court that a stay is appropriate. *Netlist, Inc. v. Smart Storage Sys., Inc.*, 2014 WL 4145412, at *1 (N.D. Cal. Aug. 21, 2014).[2]

## BACKGROUND

Adidas AG is the owner by assignment of the patents-in-suit. Adidas America is the exclusive licensee in the United States under the patents-in-suit. The '079 patent is titled "Shoe and Sole." Issued on May 17, 2016, the '079 patent describes the invention as including specific "leaf spring elements" intended to provide cushioning properties that minimize disadvantages associated with the use of foamed materials, which are typically used in shoe construction. The '285 patent also is titled "Shoe and Sole." Issued on May 24, 2016, the '285 patent describes the invention similarly. On July 11, 2016, Plaintiffs filed a complaint against Defendant, alleging that Defendant's Mega Blade shoes infringe one or more claims of the patents-in-suit. Since then, Defendant has filed a total of five petitions for IPR, raising validity challenges in each petition to all asserted claims from the patents-in-suit. The primary differences among the several petitions relate to the prior art.

On October 24, 2016, Defendant filed its first two petitions seeking IPR (the "Luthi/Chan Petitions").[3] In these two petitions, Defendant asks the PTAB to institute IPR on all of the claims that Plaintiffs have asserted in this lawsuit as of the date of those petitions. This consists of all

---

[2] These standards mirror those used when courts analyze motions to stay pending reexamination under the pre-AIA statutory framework in effect before September 16, 2012. *See, e.g., Aten Int'l Co. v. Emine Tech. Co.*, 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010). Courts agree that "[a]lthough *inter partes* review is a new means to challenge patent validity, the same general principles that governed stays pending the old *inter partes* reexamination process should apply with equal force to stays pending the new *inter partes* review." *CANVS Corp.*, 118 Fed. Cl. at 591 n.5.

[3] The Luthi/Chan Petitions refer to the following three patents: (1) U.S. Patent No. 6,769,202 B1 issued to Luthi et al. ("Luthi '202"); (2) U.S. Patent No. 5,461,800 issued to Luthi et al. ("Luthi '800"); and (3) U.S. Patent No. 7,383,647 B2 issued to Chan et al. ("Chan").

thirty claims of the '079 patent and claims 20-32 of the '285 patent. In the Luthi/Chan Petitions, Defendant asserts that the challenged claims are invalid as obvious in view of certain prior art in combination with ordinary skill in the art and other references. On April 26, 2017, the PTAB instituted IPR on both Luthi/Chan Petitions. In response to one of the Luthi/Chan Petitions, the PTAB instituted review to determine whether claims 1-30 of the '079 patent are unpatenable under 35 U.S.C. § 103 based on Luthi '202 either alone or in combination with Luthi '800 and Chan. In response to the other Luthi/Chan Petition, the PTAB instituted review to determine whether claims 20-32 of the '285 patent are unpatenable under 35 U.S.C. § 103 based on Luthi '202 either alone or in combination with Luthi '800 and Chan. In response to both Luthi/Chan Petitions, the PTAB determined that Defendant "establishes a reasonable likelihood that [it] will prevail in showing the unpatentability of at least one of the [asserted] claims" in each of the patents-in-suit. ECF 133-1 at 2; ECF 133-2 at 2.

On November 22, 2016, Defendant filed its third and fourth IPR petitions (the "Dillon/Lyden Petitions").[4] The Dillon/Lyden Petitions challenge the same claims as the Luthi/Chan Petitions, however, they are based on different prior art. On May 31, 2017, the PTAB declined to institute IPR in connection with the Dillon/Lyden Petitions.

On December 2, 2016, after Defendant had filed its first four IPR petitions, Plaintiffs served their infringement contentions. In that document, Plaintiffs asserted several additional claims from the '285 patent that Plaintiffs had not previously raised in connection with their motion for preliminary injunction, filed on July 29, 2016. Defendant then filed its fifth IPR petition on February 2, 2017, which addresses Plaintiffs' newly asserted claims 1, 2, 8, and 13-18

---

[4] The Dillon/Lyden Petitions refer to the following two patents: (1) U.S. Patent No. 7,549,236 B2 issued to Dillion et al. ("Dillon"); and (2) U.S. Patent No. 7,107,235 B2 issued to Lyden et al. ("Lyden").

of the '285 patent. The PTAB has not yet ruled upon this fifth petition, but a ruling is expected by August 27, 2017. *See* 35 U.S.C. § 314(b). On February 9, 2017, one week after Defendant filed with the PTAB Defendant's fifth petition for IPR, Defendant filed with this Court the pending motion to stay.

## DISCUSSION

In deciding whether to stay proceedings, the Court assesses three factors, which are identified in *Universal Elecs.*, 943 F. Supp. 2d at 1030-31, and *Wonderland Nursery Goods*, 2015 WL 1809309 at *2, along with the totality of the circumstances. The three factors are: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.

### A. Stage of Litigation

This case is still in a relatively early stage. The claim construction, or *Markman*, hearing has not yet occurred, although it is scheduled to take place on June 27, 2017. Fact discovery is not scheduled to close until September 14, 2017. Initial expert reports are not due until October 12, 2017, and rebuttal expert reports are not due until November 17, 2017. Expert discovery must be completed by December 18, 2017. Dispositive motions are not due until January 22, 2018, and likely will not be heard in oral argument until sometime in March 2018. Finally, a trial date has not yet been scheduled.

In considering this first factor, "district courts should generally consider whether discovery is complete and whether a trial date has been set." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 n.6 (Fed. Cir. 2014) (quotation marks omitted). Neither has yet occurred. At least three more months of fact discovery remain, expert discovery has not yet begun, and trial likely will not occur for at least 12 months. Thus, the first factor

weighs in favor of granting a stay. *Id.*; *see also Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770 (E.D. Pa. 2014) ("Courts often find the stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court, even when the parties and/or the court have already devoted substantial resources to the litigation.").

**B. Simplification of the Issues**

Defendant argues that, because the PTAB has instituted IPR for the first two petitions, simplification of the issues in this case is assured. According to Defendant, 81 percent of final written IPR decisions result in invalidation of at least some of the challenged claims and, in close to half of all cases, invalidation of all challenged claims occurs. Defendant also argues that staying this action will provide the Court with the PTAB's expert view on the validity of the patents-in-suit, minimize any remaining discovery issues, reduce the costs and burdens to both parties, encourage settlement without the intervention of the Court, and, if some of Plaintiffs' claims were to survive, limit the invalidity grounds that Defendant could assert at trial.

Plaintiffs counter that there is a 75 percent chance that at least one of the challenged claims will survive. Plaintiffs also argue that the claim construction standard used by the PTAB is materially different from the standard used in district court proceedings and, therefore, that any claim construction the PTAB provides is only preliminary and subject to change. Finally, Plaintiffs argue that IPR will not necessarily foreclose Defendant from raising other grounds for challenging the patents-in-suit.

The Court agrees with Defendant. Defendant has petitioned for review of all asserted claims from the patents-in-suit, making the outcome of IPR potentially case-dispositive. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[I]n general, when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."). Further, even if the PTAB

does not grant Defendant's final remaining petition, the PTAB's review of the claims challenged in the Luthi/Chan Petitions is likely to simplify the issues for trial. If the PTAB cancels the claims challenged in the Luthi/Chan Petitions, Plaintiffs will no longer be able to base their patent infringement cause of action on any alleged infringement of the '079 patent and will be limited to asserting significantly fewer claims from the '285 patent.

Plaintiffs argue that IPR review will not "guarantee" resolution or simplification of the issues, but that is not the standard. Rather, "[w]hatever outcome occurs, there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or narrowing the scope of a modified claim." *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, at *3 (D. Del. Jan. 11, 2013). "[E]ven if certain (or all) of the claims are ultimately confirmed, the Court will likely benefit . . . from the [PTAB's] analysis." *Id*. at *4; *accord Destination Maternity*, 12 F. Supp. 3d at 769 (concluding that, "[a]lthough there may be issues or defenses that cannot be addressed through *inter partes* review," the PTAB's review of a high percentage of the asserted claims "will very likely provide significant simplification of the issues"). Thus, the second factor weighs in favor of granting a stay.

### C. Undue Prejudice or Clear Tactical Disadvantage

Defendant argues that a stay will not unduly prejudice or present a clear tactical disadvantage to Plaintiffs. In response, Plaintiffs argue that a stay will result in undue prejudice caused by the irreparable harm that adidas has suffered and continues to suffer as a result of Defendant's ongoing sale of the infringing Mega Blade shoes. The Court, however, has denied Plaintiffs' motion for preliminary injunctive relief on several grounds, including that Plaintiffs have failed to show a likelihood of irreparable harm. Thus, the third factor weighs in favor of granting a stay. Finally, the Court also concludes that the totality of the circumstances justifies granting a stay.

## CONCLUSION

Defendant's Motion to Stay Pending *Inter Partes* Review (ECF 119) is GRANTED. The parties shall file a joint status report not later than thirty days after the PTAB issues its final decision concerning the matters relevant to this lawsuit.

**IT IS SO ORDERED**.

DATED this 12th day of June, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge